Carolyn N. HENRY, Deborah Sargent,
Cynthia R. Cash, Plaintiffs,

v.

TRAMMELL CROW SE,
INC., Defendant.

No. 98–2577 DV.

United States District Court,
W.D. Tennessee,
Western Division.

Oct. 22, 1998.

Donald A. Donati, Reva M. Kriegel, Donati & Associates, P.C., Memphis, TN, for plaintiffs.

Stephen F. Fisher, Kristin E. Toussaint, Jackson Lewis Schnitzler & Krupman, Greenville, SC, Jeff Weintraub, Weintraub Stock Bennett Grisham & Underwood, Memphis, TN, for defendant.

## ORDER DENYING DEFENDANT'S PARTIAL MOTION TO DISMISS

DONALD, District Judge.

Before this court is the motion of Defendant, Trammell Crow SE, Inc., for partial dismissal of Plaintiffs', Carolyn Henry ("Henry"), Deborah Sargent ("Sargent") and Cyn-

thia Cash ("Cash"), claims that Defendant violated 42 U.S.C. § 1981 (" § 1981") by subjecting Henry, Sargent and Cash to discriminatory treatment in their employment with Defendant and by terminating Sargent's employment with Defendant. Defendant avers that Plaintiffs did not have employment contracts with Defendant at the time of the alleged discriminatory treatment. Because the provisions of § 1981 only provide protection for those who have entered into or are in the process of entering into a contractual relationship, Defendant concludes that Plaintiffs' claims are not properly brought under § 1981 and therefore should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim under which relief can be granted.

Plaintiffs allege that Defendant discriminated against them in the enjoyment of the benefits, privileges and conditions of their employment with Defendant and thereby violated § 1981. Plaintiffs also allege that Defendant violated § 1981 by discriminating against Sargent in the termination of her employment with Defendant.

For the following reasons, this court denies Defendant's partial motion to dismiss.

## I. FACTS

### A. PLAINTIFF HENRY

Plaintiff Henry, an African–American, was hired by Defendant on February 24, 1997 to serve as Assistant Controller for the General Accounting Department at Defendant's Southeast Financial Services, Investor Services Division in Memphis, Tennessee. (Def.'s Ans. ¶ 9). In her capacity as assistant controller, Henry was responsible for overseeing accounts receivable, accounts payable and cash management functions. (Def.'s Ans. ¶ 9). Henry also supervised thirteen assistant accountants in Defendant's General Accounting group. (Pls.' Compl. ¶ 9). Of these thirteen assistant accountants, only two are African–American. (Pls.' Compl. ¶ 9). At the time of her hiring, Plaintiffs allege that Phyllis Bottom, a human resource coordinator for Defendant, warned Henry that the white subordinates in her group would resent her supervisory position because she was African–American. (Pls.' Compl. ¶ 10). Defendant denies that this incident ever took place. (Def.'s Ans. ¶ 10).

On July 7, 1997, Henry scheduled a meeting with all of the Assistant Accountants in the General Accounting group. (Def.'s Ans. ¶ 11). The purpose of the meeting was to discuss Henry's concerns about homophobic comments, racially offensive remarks, gossiping and inappropriate games among her staff. (Pls.' Compl. ¶ 11). The parties dispute what occurred at this meeting. Plaintiffs aver that Henry merely expressed her opinion that the alleged conduct was unprofessional and violative of company policy. (Pls.' Compl. ¶ 11). On the other hand, Defendant contends that Henry issued an "official verbal warning" to the group about spreading rumors. (Def.'s Ans. ¶ 11).

On July 8, 1997, Vince Dunavant ("Dunavant"), Senior Vice President of Operations for Defendant's Memphis office and Tina Hopkins ("Hopkins"), Human Resources Coordinator for Defendant, met with Plaintiff Henry to discuss what had occurred at the July 7, 1997 meeting. (Def.'s Ans. ¶ 12). At that meeting, Dunavant reprimanded Henry for holding what he considered to be an inappropriate meeting and for disciplining an entire group of employees without determining individual culpability. (Def.'s Ans. ¶ 12). Dunavant also informed Henry that several of the employees who had attended the July 7, 1997 meeting were upset by the verbal warning given to the group. (Def.'s Ans. ¶ 12). All of the employees who complained about Henry's conduct were white. (Pls.' Compl. ¶ 13).

After expressing disapproval of Henry's conduct, Dunavant initiated a discussion with Henry about a job transfer. (Pls.' Compl. ¶ 12). The parties disagree over the proper characterization of this discussion. Plaintiffs allege that Dunavant told Henry she would be transferred out of her department immediately. (Pls.' Compl. ¶ 12). Plaintiffs aver that Henry accepted this transfer only because she feared she would lose her job if she declined. (Pls.' Compl. ¶ 12). Plaintiffs allege that the new assignment was inferior to the position Henry formerly held because she was given no staff or supervisory duties in

her new position. (Pls.' Compl. ¶ 12). On the other hand, Defendant contends that Dunavant merely asked Plaintiff whether she would accept a new assistant controller assignment. (Def.'s Ans. ¶ 12). Defendant alleges that Henry seemed "excited and relieved" to accept this new assignment. (Def.'s Ans. ¶ 12). The parties do agree that Henry's new position allowed her to retain both her title and the same amount of compensation she had received in her former position. (Pls.' Compl. ¶ 12).

During the week of July 28, 1997, Dunavant and Joe Brown, Defendant's Vice President and Regional Controller, interviewed three members of Henry's former staff. (Def.'s Ans. ¶ 15). The parties disagree as to the purpose of these interviews. Plaintiffs assert that the interviews were conducted to determine whether Henry should be manager of the general accounting department. (Pls.' Compl. ¶ 15). Based upon allegations that white managers or supervisors are not subjected to similar treatment, Plaintiffs allege these interviews constituted discriminatory treatment of Plaintiff Henry. (Pls.' Compl. ¶ 15). Defendant contends that the interviews were conducted as nothing more than an investigation of Henry's complaint that her staff had been "out to get her." (Def.'s Ans. ¶ 15).

On December 1, 1997, Henry was informed that she would receive a one thousand dollar salary increase but no year-end bonus pay. (Pls.' Compl. ¶ 19). Other assistant controllers received higher salary increases and merit bonuses. (Pls.' Compl. ¶ 19). Plaintiffs allege that this discrepancy in compensation occurred because Defendant discriminated against Henry by requiring her to satisfy a higher performance standard than her white coworkers.[1] (Pls.' Compl. ¶ 20). Defendant, on the other hand, contends that the other assistant controllers received higher salary increases and bonuses only because they received higher performance ratings than Henry. (Def.'s Ans. ¶ 19).

Henry filed a charge against Defendant with the Equal Employment Opportunity Commission ("EEOC") on January 2, 1998. (Pls.' Compl. ¶ 21). In her charge, Henry alleged that she had suffered retaliation and discrimination on the basis of her race and color. (Pls.' Compl. ¶ 21). The complaint avers that Henry suffered excessive scrutiny and isolation from Defendant's employees after she filed her EEOC charge. (Pls.' Compl. ¶ 21). Defendant denies the truth of these allegations. (Def.'s Ans. ¶ 21).

## B. PLAINTIFF SARGENT

Plaintiff Sargent, an African–American, was hired by Defendant on March 3, 1997 as one of two Associate Accountants in the Southeast Financial Services, Investor Services Division. (Def.'s Ans. ¶ 22). Plaintiffs allege that Defendant informed Plaintiff Sargent at the time of her hiring that she would receive two weeks of training on the various accounting systems used by Defendant. (Pls.' Compl. ¶ 22). Plaintiffs further allege that Sargent only received two days of training while five of Defendant's white employees received two weeks of training as new hires. (Pls.' Compl. ¶ 22). Defendant denies this allegation of discrimination. (Def.'s Ans. ¶ 22).

Plaintiffs allege that Plaintiff Sargent was the victim of several incidents of racial discrimination by Defendant. Sargent avers that she was discriminated against when her supervisor, Cindy Clayton ("Clayton"), reprimanded her for leaving work early, even though Sargent had tried to advise Clayton of her early leave on four occasions. (Pls.' Compl. ¶ 24). Plaintiffs also allege that Defendant allowed a racially hostile work environment to exist as evidenced by racially offensive remarks made in the presence of Sargent's co-workers. (Pls.' Compl. ¶¶ 25, 36). Defendant denies all of these allegations and explains that what Plaintiffs perceive as racially offensive remarks were really negative comments about working with accountants. (Def.'s Ans. ¶ 25).

---

1. Plaintiffs allege that Henry did not receive the salary increase and bonus she should have received because of an error she had made. (Pls.' Compl. ¶ 19). Plaintiffs argue that the error had been corrected and that errors made by white employees did not result in a loss of bonus pay or lower salary increases. (Pls.' Compl. ¶ 20).

On July 15, 1997, Dunavant and Clayton met with Sargent and informed her that her position was being eliminated. (Pls.' Compl. ¶ 28). Dunavant and Clayton offered to transfer Plaintiff Sargent to a new accounts payable position. Sargent refused to accept this offer. (Pls.' Compl. ¶ 28). Sargent states that she refused this position because she had already informed Defendant during her initial job interview that she was only interested in positions involving a variety of accounting procedures. (Pls.' Compl. ¶ 28).

After Sargent declined the offer of a new position, Clayton inquired as to whether Sargent would resign. (Def.'s Ans. ¶ 29). Sargent then submitted a letter of resignation. (Pls.' Compl. ¶ 29). Sargent avers that her position was eliminated because of racial animus and in retaliation for her protests against unfair treatment. (Pls.' Compl. ¶ 30). Defendant contends that Sargent's position was eliminated because of a division reorganization. (Def.'s Ans. ¶ 28).

The parties are in dispute as to whether Sargent received severance pay after her resignation. Sargent avers that she did not receive the standard severance pay given when an employee's position is eliminated without cause. (Pls.' Compl. ¶ 29). On the other hand, Defendant contends Sargent received severance and vacation pay after her resignation. (Def.'s Ans. ¶ 29).

### C. PLAINTIFF CASH

Plaintiff Cash, an African–American, was hired by Defendant on March 27, 1997. (Pls.' Compl. ¶ 32). Cash was hired as an Assistant Accountant in the General Accounting Department of Defendant's Memphis office on a temporary basis. (Pls.' Compl. ¶ 32). At the time of Cash's hiring, Defendant allegedly had a policy of providing new employees two weeks of training at the start of their employment. (Pls.' Compl. ¶ 32). Cash alleges that Defendant discriminated against her by only providing her with two and one-half days of initial training. (Pls.' Compl. ¶ 32). Defendant denies both the existence of any training policy or that it discriminated against Cash. (Def.'s Ans. ¶ 32).

Although Cash is the only assistant accountant in the General Accounting Department with a bachelor's degree, she is also the lowest paid assistant accountant in that department. (Pls.' Compl. ¶ 33). Plaintiffs contend that the disparity between Cash's educational background and her compensation is evidence of racial discrimination. (Pls.' Compl. ¶ 33). Plaintiffs further allege that the two black accountants in Defendant's General Accounting Department are the lowest paid accountants in the department, even though their responsibilities are identical to those of the other assistant accountants. (Pls.' Compl. ¶ 33). Defendant denies Plaintiffs' contentions that the black accountants are the lowest paid members of the General Accounting Department and that the responsibilities of all assistant accountants are identical. (Def.'s Ans. ¶ 33).

Plaintiffs assert that Cash has been isolated, shunned and threatened with termination since she complained to Defendant's national human resource director about racial discrimination. (Pls.' Compl. ¶ 34). Defendant denies these allegations. (Def.'s Ans. ¶ 34).

### II. STANDARD

In considering a Rule 12(b)(6) motion to dismiss, the court is limited to examining whether plaintiff's complaint sets forth allegations sufficient to make out the elements of a cause of action. *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir.1983), *cert. denied*, 469 U.S. 826, 105 S.Ct. 105, 83 L.Ed.2d 50 (1984). A complaint should not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the [p]laintiff can prove no set of facts in support of his claim which would entitle him to relief." *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 724 (6th Cir.1996) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). *Accord Craighead v. E.F. Hutton & Co.*, 899 F.2d 485, 489 (6th Cir.1990). In reviewing a complaint on a motion to dismiss, the court's duty is to "construe the complaint liberally in the plaintiff's favor and accept as true all factual allegations and permissible inferences therein." *Conley*, 355 U.S. at 45–46, 78 S.Ct. 99. *Accord Craighead*, 899 F.2d at 489 (citing *Hishon v. King & Spalding*,

467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)).

While "a complaint need not set down in detail all the particularities of a plaintiff's claim," the complaint must give the defendant "fair notice of what the defendant's claim is and the grounds upon which it rests." *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir.1994). Although the standard is liberal, the plaintiff must plead more than bare legal conclusions, "In practice … a complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993) (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)).

## III. ANALYSIS

Defendant contends that Plaintiffs' claims under § 1981 do not state a cause of action and therefore cannot survive a 12(b)(6) motion to dismiss. Section 1981 states in relevant part.

> (a) All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

> (b) For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship.

42 U.S.C. § 1981(a) & (b) (1994).

These provisions provide "a federal remedy against discrimination in private employment on the basis of race." *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 459, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). A plaintiff who brings a successful claim under § 1981 is entitled to equitable and legal relief, in-

cluding compensatory and, where appropriate, punitive damages. *Id.*

Prior to the enactment of the Civil Rights Act of 1991, § 1981 was narrowly construed to only allow claims of discrimination in the formation of contracts or in the enforcement of contracts through the legal system. *See Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). In *Patterson*, the Court found that a plaintiff could not recover on her § 1981 claim where she alleged that defendant was guilty of racial harassment. *Id.* at 2373. The Court held that § 1981 did not apply to an employer's discriminatory conduct after a contract relation had been formed. *Id.* at 2374.

■ Congress overruled the Court's narrow construction of § 1981 in *Patterson* by enacting the Civil Rights Act of 1991. This act added subsection (b) to § 1981, which defined the phrase "to make and enforce contracts" to include "the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship." 42 U.S.C. § 1981 (1994). By inserting this language into the statute, Congress expanded the scope of § 1981 to include claims of discrimination in the terms and conditions of employment. Accordingly, plaintiffs can now bring claims of racial harassment or discriminatory discharge under § 1981. *See, e.g. Ferrill v. The Parker Group, Inc.*, 967 F.Supp. 472, 474 (N.D.Ala.1997); *Zapata v. IBP, Inc.*, 167 F.R.D. 147, 159 (D.Kan.1996); *Bonaparte v. New York City Department of Housing Preservation and Development*, 1995 WL 479417, at *2 (S.D.N.Y.1995).

However, a plaintiff bringing a § 1981 claim must still demonstrate that a contract exists before she can invoke the protections of § 1981. Thus, this court must address two questions to determine if Defendant's motion for partial dismissal should be granted: 1) whether employment at will relationships are sufficiently contractual under Tennessee law to support a § 1981 claim, and, 2) whether Plaintiffs have sufficiently pled a contractual relationship with Defendant to sustain a § 1981 claim.

## A. Employment At Will

There is no consensus among federal courts as to whether an at will employee can bring a claim of discrimination under § 1981. Some courts have held that at will employees cannot establish the necessary contractual relationship to invoke the provisions of § 1981. *See, e.g. Simpson v. Vacco,* No. 96 CIV.3916 (JFK), 1998 WL 118155, at *8 (S.D.N.Y. March 17, 1998); *Spriggs v. Diamond Auto Glass,* No. Civ. S 97–1449, 1997 WL 880756, at *1 (D.Md. Oct.15, 1997), *Moorer v. Grumman Aerospace Corp.,* 964 F.Supp. 665, 675–76 (E.D.N.Y.1997); *Moscowitz v. Brown,* 850 F.Supp. 1185, 1192–93 (S.D.N.Y.1994). All of these courts relied upon the governing state law to form their conclusions that no contract existed. Other courts have rejected this reasoning, finding that a contract can exist, within the meaning of § 1981, even if that contract is otherwise terminable at will by either party. *See, e.g. Larmore v. RCP/JAS, Inc.,* No. CIV.A. 97–5330, 1998 WL 372647, at *3 (E.D.Pa. May 19, 1998); *Marquess v. City of Philadelphia,* No. Civ.A. 98–1117, 1998 WL 355519, at *3 (E.D.Pa. June 29, 1998); *Hudson v. Radnor Valley Country Club,* No. Civ.A. 95–4777, 1996 WL 172054, at *2 (E.D.Pa. April 11, 1996); *Bolden v. Archdiocese of Philadelphia,* No. Civ.A. No. 94–3899, 1995 WL 46694, at *4 (E.D.Pa. Feb.1, 1995); *Baker v. American Juice, Inc.,* 870 F.Supp. 878, 883 (N.D.Ind.1994).

Defendant contends that this question has already been settled in this Circuit by *Wilmer v. Tennessee Eastman Co.,* 919 F.2d 1160 (6th Cir.1990). In *Wilmer,* the court affirmed the lower court's grant of summary judgment on plaintiff's § 1981 and breach of contract claims. *Wilmer* at 1164. After explaining why neither of plaintiff's claims could survive summary judgment, the court addressed arguments raised in the dissenting opinion. *Id.* During the midst of this discussion, the court made the following statement: "[m]oreover, and in any event, since we here-

in hold that, under Tennessee law, Wilmer was an employee at will and had no contract of employment, Wilmer could not in this action recover for discriminatory discharge in breach of contract." *Id.* Defendant relies upon this statement for its assertion that an at will employee can never recover on a § 1981 claim.

Although this language, read in a vacuum, may suggest that Defendant's argument has merit, the context of the statement and the rest of the opinion indicate that *Wilmer* should not be construed as prohibiting at will employees from ever recovering on § 1981 claims where the emphasis is on race discrimination and not breach of contract. In *Wilmer,* the plaintiff claimed that the defendant had violated § 1981 by subjecting plaintiff to discriminatory treatment on the job and by firing him. In rejecting plaintiff's appeal of summary judgment entered against him on his § 1981 claims, the court's holding did not rest upon a per se ban against § 1981 claims by at will employees. Rather, the court rejected plaintiff's argument that *Patterson* should not be applied retroactively to his lawsuit. *Patterson* held that § 1981 only covered claims of discrimination in the formation and enforcement of contracts. Under *Patterson,* the plaintiff in *Wilmer* could not have recovered on his § 1981 claims for discriminatory treatment or discriminatory discharge. Accordingly, the plaintiff argued that *Patterson* should not be applied retroactively to his case under the rule of *Chevron Oil v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971).[2] The court responded to this argument by noting that the Sixth Circuit had already established a precedent of applying *Patterson* retroactively. Based on its determination that *Patterson* applied to plaintiff's case, the court held that the plaintiff could not recover on his § 1981 claims and affirmed the lower court's grant of summary judgment on these claims.

From the *Wilmer* court's analysis of plaintiff's § 1981 claims, it is clear that the court

---

**2.** Before *Chevron,* federal courts followed *Goodman v. Lukens Steel Co.,* 482 U.S. 656, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987), which expressed the general rule that a court should follow the rule of law which is in effect at the time the court renders its decision. In *Chevron,* the Court creat-

ed a narrow exception to this general rule by declaring that a newly announced rule at issue in a case should not be applied retroactively where certain criteria were met. *Chevron* at 106–07, 92 S.Ct. 349.

did not intend to announce a per se ban against all § 1981 claims brought by at will employees. All of the court's discussion of plaintiff's § 1981 claims centered around the retroactivity of *Patterson*. The court never addressed whether Congress intended to limit relief under § 1981 to employees with contracts of definite duration. There was no indication in its opinion that the court examined the legislative history of § 1981 to ascertain whether at will employees are protected by the provisions of § 1981. The court offered no court cases construing § 1981 as prohibiting at will employees from recovering under the statute. In short, the court never offered any evidence supporting the proposition that at will employees can never recover under § 1981. The *Wilmer* court did not do any of these things because it was not presented with the question of whether at will employees can ever recover on a § 1981 claim.

On the contrary, the language referred to by Defendant expressly states that the court relied upon its analysis of plaintiff's breach of contract claim to conclude that Wilmer could not recover for discriminatory discharge in breach of contract. An examination of this analysis also reveals that the *Wilmer* court did not intend to issue a per se ban against § 1981 claims by at will employees. In his breach of contract claim, the plaintiff in *Wilmer* alleged that the defendant's employment manual and posted policy statements guaranteed that he could not be terminated because of his race. The court found that the language of the manual and the policy statements failed to manifest any contractual intent from the defendant. *Wilmer* at 1163–64. Based upon this determination, the court concluded that defendant could not have breached a contract not to fire plaintiff because of his race where no such contract existed. *Id.* at 1164. Nothing in this analysis suggests that the *Wilmer* court adopted a per se ban against § 1981 claims by at will employees.

A careful reading of the language used by Defendant to support its motion for partial dismissal also indicates that *Wilmer* is factually distinguishable from the present case. The *Wilmer* court stated that "Wilmer could

not in this action recover for a discriminatory discharge *in breach of contract.*" *Wilmer* at 1164 (emphasis added). In the case at hand, the Plaintiffs are not arguing that Defendant breached its employment contract with them by discriminating against them on the basis of their race. The Plaintiffs charge that Defendant violated their statutory rights under § 1981. There is a marked difference between a claim for breach of contract and a claim of a statutory violation. If the Plaintiffs were bringing a breach of contract action for discriminatory treatment and discriminatory discharge, their claim would be barred under the holding of *Wilmer*. However, the holding of *Wilmer* does not bar statutory claims brought under § 1981 by at will employees.

■ Furthermore, Tennessee law recognizes employment at will as a contractual relationship. Under Tennessee law, the employer-employee relationship is contractual in nature. *Hamby v. Genesco, Inc.*, 627 S.W.2d 373, 375 (Tenn.Ct.App.1981) (citing 53 Am. Jur.2d *Master and Servant* § 14 (1970)). This is true even where the employment relationship does not have a definite duration. *Williams v. Maremont Corp.*, 776 S.W.2d 78, 80 (Tenn.Ct.App.1988). An employment contract of indefinite duration can still be a contract, if the parties have entered into an agreement as to other terms of employment. *Id., Rose v. Tipton County Public Works Dept.*, 953 S.W.2d 690 (Tenn.Ct.App. 1997). Accordingly, it is possible for an at will employee to have an employment contract for specified wages and hours, although she could be terminated at any time without cause.

Based on the foregoing, the court rejects Defendant's contention that Plaintiffs' § 1981 claims must be dismissed because at will employees cannot recover under § 1981.

### B. SUFFICIENT PLEADING

Defendant contends that Plaintiffs have failed to allege an underlying contractual relationship between Plaintiffs and Defendant to support their § 1981 claims. Defendant's contention assumes that an at will employment relationship is not contractual and therefore is insufficient to support § 1981

claims for discriminatory treatment and retaliatory discharge. Contrary to this assumption, Tennessee law does consider at will employment relationships to be contractual in nature. Although an at will employee cannot bring a breach of contract claim for wrongful termination, his employment relationship is sufficiently contractual to grant him the right to recover under § 1981. Accordingly, Defendant's allegations of insufficient pleading must be rejected.

Plaintiffs allege that Henry was hired to serve as Assistant Controller for Defendant's General Accounting Department. Plaintiffs also allege that Defendant promised Henry a raise in salary of one thousand dollars. These allegations are more than sufficient to constitute adequate pleading of an employment relationship between Plaintiff Henry and Defendant.

Plaintiffs have also adequately pled that an employment relationship exists between Plaintiff Sargent and Defendant. Plaintiffs allege that Sargent was hired as an Associate Accountant by Defendant on March 3, 1997. Plaintiffs also allege that Sargent was promised two weeks of training by Defendant. Plaintiffs allege that Sargent resigned after her position with Defendant was eliminated.

Plaintiffs allege that Plaintiff Cash was hired as an Assistant Accountant on March 27, 1997. Plaintiffs also assert that Plaintiff was one of thirteen Assistant Accountants in Defendant's General Accounting Department. These allegations are also sufficient to withstand Defendant's motion for partial dismissal.

## IV. ORDER

Based on the foregoing, Defendant's Motion for Partial Dismissal of Plaintiffs' claims under 42 U.S.C. § 1981 is **DENIED.**