Michael **BURTON** and Aimee Davis, Plaintiffs,

v.

**PLASTICS RESEARCH CORP.,** a Michigan corporation, Defendant.

No. CIV 99–40386.

United States District Court, E.D. Michigan, Southern Division.

March 30, 2001.

---

Tom R. Pabst, Flint, MI, for plaintiffs.

Jay A. Schwartz, Julie S. Silberg, Schwartz Law Firm, Farmington Hills, MI, for defendant.

### *MEMORANDUM OPINION AND ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT*

GADOLA, District Judge.

Before this Court is Defendant Plastics Research Corporation's Motion for Summary Judgment. For reasons set forth below, this Court denies in part and grants in part Defendant's motion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Michael Burton and Aimee Davis are former employees of Defendant Plastics Research Corporation, which is located in Genesee County. Plaintiff Burton was employed "at-will." Plaintiff Davis was an hourly employee whose employment was governed by a collective bargaining agreement between Defendant and the International Brotherhood of Teamsters. Plaintiff Davis was fired on September 8, 1998, and Plaintiff Burton was fired on September 9, 1998.

Plaintiff Burton is a black male; Plaintiff Davis is a white female. According to Plaintiffs' Complaint, Plaintiffs "happened to fall in love with each other." (Compl.¶ 6.) Plaintiffs allege that Defendant "did not like a black man having an amorous relationship with a white woman," (Compl.¶ 7), and consequently Defendant discriminated against Plaintiffs on the basis of race, ultimately resulting in the termination of their employment.

Defendant alleges that, in spite of being a well-liked employee, Plaintiff Burton was discharged "for continually and progres-

sively exercising bad judgment." (Def. Resp. at 1.) Defendant further alleges that Plaintiff Davis was terminated because she violated Defendant's attendance policy. (*Id.*)

Plaintiffs have produced evidence of racist policies and remarks by Defendant's management and employees. Defendant's Chief Operating Officer at the time of Plaintiff Burton's employment, Bob Kniss, submitted an affidavit in which he stated that Defendant's Chief Executive Officer and Defendant's human resources/personnel supervisors expressly agreed among themselves to "hire fewer black workers and more Russian immigrant Jew workers and Hispanic workers" because "Jewish workers and Hispanic workers were superior to the black workers." (Pls. Ex. 1 (Kniss Aff.) ¶ 3.) Former employee Ralph Knopek stated in his affidavit and testified at his deposition that several of Defendant's supervisors regularly and openly told "nigger jokes," and spoke derogatorily of black people, including referring to them as "niggers" and "lazy blacks." (Pls. Ex. 3 (Knopek Aff.) ¶¶ 3–9; Pls. Ex. 4 (Knopek Dep.).)

Plaintiff Burton, the only black supervisor, stated at his deposition that other supervisors regularly made racist remarks to him, including: referring to him as "nigger," "boy," and the "wrong color" (Pls. Ex. 2 (Burton Dep.) at 62, 73, 77); a supervisor asking "so big black stud supervisor Mike Burton likes white girls, huh?" (*id.* at 71; *see* Pls. Ex. 5 (Davis Dep.) at 93); another supervisor telling Plaintiff Burton that he does not like "niggers" (Pls. Ex. 2 at 64); and others telling him "nigger" jokes (*id.* at 58). When Plaintiff Burton complained to Defendant's Administrative Services Director, Theresa Preniciaro, he was told only, "Oh, Mike, they don't mean it that way." (*Id.* at 60.) The racial antagonism increased after co-workers discovered that Plaintiffs were dating

each other. In spite of being told that Defendant had "zero tolerance" for employees kissing each other, several employees in dating relationships with each other could be seen kissing at work. (*See id.* at 54.) Soon after Plaintiffs were accused of kissing each other, they were fired. (*Id.* at 8.)

Plaintiff Davis stated at her deposition that Plaintiff Burton was the target of racist remarks and that she and he were treated differently than other unmarried couples working for Defendant. (*See, e.g.,* Pls. Ex. 5 (Davis Dep.) at 50–51, 58, 62, 93, 95.)

A memorandum prepared by Administrative Services Director Preniciaro, and dated Monday, August 31, 1998, provides the following justification for Plaintiff Burton's termination:

> Mike Burton has had 5 serious warnings in the past 8 months alone (as a Supervisor). Every week it seems something different happens. The last incident on 8–28–98 put PRC in jeopardy. A Supervisor should know better and NOT go to the house of an employee. Especially a female's house and after hours. I recommend we terminate Mike's employment effective immediately or at least take him out of the supervisory capacity as soon as possible.

(Pls.Ex. 11.) The incident on August 28, 1998 is described as follows:

> Employee's purse stolen in plant—Mike Burton failed to document the incident (with-holding information), failed to notify management (until management approached him), and then on top of all that—ended up going to a female employee's house, after hours (after midnight) when she called him and asked him to go there, cuz she had to talk to him about the incident). All of which are definitely NOT signs of a leader or supervisor.

(*Id.*) Plaintiff Burton stated at his deposition that after an employee's purse was stolen during his shift, another employee called him and asked him to come over to her house. (Def. Ex. D (Burton Dep.) at 120–21).) Plaintiff went to that employee's house on the advice of a fellow supervisor, and that employee confessed to stealing the purse and returned it to Plaintiff Burton. (*Id.* at 121.)

On or about July 2, 1999, Plaintiffs filed a four count Complaint in the State of Michigan Circuit Court for the County of Genesee. Count I alleges that Defendant violated Plaintiff Burton's rights under the U.S. Constitution on the basis of race in violation of 42 U.S.C. §§ 1981 and 1988. Count II alleges that Defendant violated Plaintiff Davis' rights under the U.S. Constitution on the basis of race in violation of 42 U.S.C. §§ 1981 and 1988. Count III alleges that Defendant violated Plaintiff Burton's rights under the Elliott Larsen Civil Rights Act, M.C.L. §§ 37.2101 *et seq.* Count IV alleges that Defendant violated Plaintiff Davis' rights under the Elliott Larsen Civil Rights Act, M.C.L. §§ 37.2101 *et seq.*

On October 4, 1999, Defendant removed this civil action to this Court. On November 2, 1999, however, this Court entered an Order of Partial Remand, remanding Counts III and IV to the Circuit Court for the County of Genesee. Thus, only Counts I and II remain before this Court. Plaintiffs are litigating the claims for relief alleged in Counts III and IV in the state court.

## II. DISCUSSION

### A. Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Martin v. Ohio Turnpike Commission,* 968 F.2d 606, 608 (6th Cir.1992).

In considering a motion for summary judgment, the court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party. *60 Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir.1987). The court is not required or permitted, however, to judge the evidence or make findings of fact. *Id.* at 1435–36. The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *Id.* at 1435.

A fact is "material" for purposes of summary judgment where proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Accordingly, where a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Id.; Feliciano v. City of Cleveland,* 988 F.2d 649, 654 (6th Cir.1993).

Once the moving party carries its initial burden of demonstrating that no genuine issues of material fact are in dispute, the burden shifts to the nonmoving party to present specific facts to prove that there is a genuine issue for trial. To create a genuine issue of material fact, the nonmoving party must present more than just some evidence of a disputed issue. As the United States Supreme Court has stated that, "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted); *see Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548; *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Consequently, the nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transportation Service, Inc.*, 738 F.Supp. 214, 217 (E.D.Mich. 1990), *aff'd*, 929 F.2d 701 (6th Cir.1991). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505; *see Cox v. Kentucky Department of Transportation*, 53 F.3d 146, 150 (6th Cir.1995).

### B. Analysis

### 1. Plaintiffs' Section 1988 Claims

Defendant argues that Plaintiffs' claims for relief under Title 42, United States Code, Section 1988 are premature because that statute authorizes a court to grant reasonable attorney's fees to the prevailing party to enforce the provisions of Section 1981. According to the United States Court of Appeals for the Sixth Circuit, the test for relief under Section 1988 is as follows: "If the plaintiff has succeeded on 'any significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing suit,' the plaintiff has crossed the threshold to a fee award of some kind." *Sutton v. Cleveland Board of Education*, 958 F.2d 1339, 1352 (6th Cir. 1992) (quoting *Texas State Teachers Association v. Garland Independent School District*, 489 U.S. 782, 791–92, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989)). Because Plaintiffs have not succeeded on any significant issue in this litigation, it is premature to consider any relief under Section 1988. Therefore, this Court will deny Defendant's motion insofar as it seeks dismissal of Plaintiffs' Section 1988 claims for relief.

### 2. Plaintiff Burton's Section 1981 Claim

Title 42, United States Code, Section 1981 "affords a federal remedy against discrimination in private employment on the basis of race." *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 459–460, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). According to the plain language of the statute, the Sixth Circuit, and several Courts of Appeals, a plaintiff must establish the following elements in order to establish a claim under Section 1981: "(1) plaintiff is a member of a racial minority, (2) defendant intended to discriminate on the basis of race, and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.)." *Johnson v. Harrell*, No. 97–5257, 1998 WL 57356, at *2 (6th Cir. Feb.2, 1998); *see Harry v. Marchant*, 237 F.3d 1315, 1322 (11th Cir.2001); *see Brown v. City of Oneonta*, 221 F.3d 329, 339 (2d Cir.2000); *Morris v. Office Max, Inc.*, 89

F.3d 411, 413 (7th Cir.1996); *Green v. State Bar of Texas,* 27 F.3d 1083, 1086 (5th Cir.1994).

The Sixth Circuit also has stated that the elements of prima facie employment case under Section 1981 are the same for employment cases under Title VII, 42 U.S.C. § 2000e. *See Johnson v. University of Cincinnati,* 215 F.3d 561, 573 n. 5 (6th Cir.2000); *Young v. Sabbatine,* No. 99–6336, 2000 WL 1888672, at *4 (6th Cir. Dec. 19, 2000) (citing *Johnson v. University of Cincinnati*).[1] According to the Sixth Circuit in *Johnson v. University of Cincinnati,* to establish a prima facie case of discrimination under either Section 1981 or Title VII, a plaintiff must show that: (1) "he is a member of a protected class"; (2) "he was qualified for his job and performed it satisfactorily"; (3) "despite his qualifications and performance, he suffered an adverse employment action"; and (4) "he was replaced by a person outside the protected class or was treated less favorably than a similarly situated individual outside his protected class." 215 F.3d at 573.

■ In light of the conflicting recitations of the elements of a Section 1981 claim, this Court concludes that the Sixth Circuit in *Johnson v. Harrell,* No. 97–5257, 1998 WL 57356, at *2 (6th Cir. Feb.2, 1998), properly stated the elements for a prima facie claim for relief under Section 1981:(1) the plaintiff is a member of a racial minority, (2) the defendant intended to discriminate on the basis of race, and (3) the discrimination concerned one or more of the activities enumerated in Section 1981. These elements comport best with the plain language of the statute[2] and the interpretation of that language offered by several Courts of Appeals.

### a. Whether Plaintiff Burton can maintain a claim under Section 1981 when he was an "at-will" employee

■ Defendant argues first that the Court should grant summary judgment in Defendant's favor because Plaintiff Burton was an "at-will" employee and, therefore, did not have a contract that could be protected by Section 1981, which protects the right to "make and enforce contracts." Defendant admits, however, that state and federal courts are split on this issue. *See generally* Marjorie A. Shields, *Can "At-Will" Employee Bring Action for Racial Discrimination Under 42 U.S.C.A. § 1981,* 165 A.L.R. Fed. 143 (2000); Licia M. Williams, *Does an At-Will Employee Have a Contract Sufficient to Support a Race Discrimination Claim Against an Employer Under 42 U.S.C. § 1981?,* 30 U. Mem. L.Rev. 923 (2000). Nevertheless, "the great weight of well-reasoned authority supports [the] conclusion that the employment-at-will relationship encompasses sufficient contractual rights to support section 1981 claims for wrongful termination." *Perry v. Woodward,* 199 F.3d 1126, 1133

---

1. The Sixth Circuit in *Johnson v. University of Cincinnati* concluded that both the elements of a prima facie case and the allocations of the burdens of proof and persuasion are the same for employment claims stemming from Title VII and Section 1981. While the allocation of burdens may be the same, it does not follow that the elements of a prima facie case are the same.

2. Section 1981 provides, in pertinent part, that,

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981.

(10th Cir.1999); *see, e.g., Spriggs v. Diamond Auto Glass,* 165 F.3d 1015, 1018–20 (4th Cir.1999); *Fadeyi v. Planned Parenthood Association of Lubbock, Inc.,* 160 F.3d 1048, 1052 (5th Cir.1998); *LaRocca v. Precision Motorcars, Inc.,* 45 F.Supp.2d 762, 774–77 (D.Neb.1999); *O'Neal v. Ferguson Construction Co.,* 35 F.Supp.2d 832, 837–38 (D.N.M.1999); *Williams v. United Dairy Farmers,* 20 F.Supp.2d 1193, 1201–02 (S.D.Ohio 1998); *Lane v. Ogden Entertainment, Inc.,* 13 F.Supp.2d 1261, 1272 (M.D.Ala.1998).

Those courts that have held that at-will employees cannot establish the necessary contractual relationship to invoke the provisions of Section 1981 have relied upon the governing state law to form their conclusions that no contract existed. *Henry v. Trammell Crow SE, Inc.,* 34 F.Supp.2d 629, 634 (W.D.Tenn.1998); *see, e.g., Wilmer v. Tennessee Eastman Co.,* 919 F.2d 1160 (6th Cir.1990) (holding that an at-will employee may not recover for discriminatory discharge under Section 1981 because the at-will relationship was not sufficiently contractual under Tennessee law). The Sixth Circuit, however, has not concluded that, in general, at-will relationships are not sufficiently contractual to support a Section 1981 claim for race discrimination. *See Henry,* 34 F.Supp.2d at 634.

■ In the absence of specific guidance from the Sixth Circuit, this Court will look to Michigan law to determine whether employment at-will relationships are sufficiently contractual. The Michigan Supreme Court has held that, "[t]he legal protection of employee interests in job security is the exception, rather than the rule, in this state. *In the absence* of contractual agreements to the contrary . . . , and *of unlawful reasons for discharge such as race . . . discrimination, private sector employees are terminable at the will of their employers."* *State Employees Association v. Department of Mental Health,*

421 Mich. 152, 158, 365 N.W.2d 93, 96 (1984) (emphasis .added and internal citation omitted). Under Michigan law, "where an employer has a legitimate reason to terminate (e.g., . . . a contract for employment at will), it may not do so for illegal reasons such as unlawful discrimination." *Featherly v. Teledyne Industries, Inc.,* 194 Mich.App. 352, 486 N.W.2d 361 (1992). Thus, Michigan courts appear to hold that at-will employment relationships are sufficiently contractual to support the sort of racial discrimination claims at issue here. Therefore, this Court rejects Defendant's first argument in support of summary judgment.

**b. Whether Plaintiff Burton can make out a prima facie case of racial discrimination under Section 1981**

Second, Defendant argues that the Court should grant summary judgment because Plaintiff Burton cannot make out a prima facie case under Section 1981. This Court concluded above that the proper elements for such a prima facie case are: (1) the plaintiff is a member of a racial minority, (2) the defendant intended to discriminate on the basis of race, and (3) the discrimination concerned one or more of the activities enumerated in Section 1981. *See Johnson v. Harrell,* No. 97–5257, 1998 WL 57356, at *2 (6th Cir. Feb.2, 1998).

A plaintiff may establish a claim of discrimination under Section 1981 either by direct evidence of discrimination or by circumstantial evidence that supports an inference of discrimination. *See Johnson v. University of Cincinnati,* 215 F.3d 561, 572 (6th Cir.2000). "The direct evidence and the circumstantial evidence paths are mutually exclusive; a plaintiff need only prove one or the other, not both." *Kline*

*v. Tennessee Valley Authority*, 128 F.3d 337, 348 (6th Cir.1997).

If Plaintiff Burton presents evidence of direct or circumstantial evidence of discrimination, then he can avoid summary judgment. "A race discrimination plaintiff can withstand a motion for summary judgment by either presenting direct evidence of discrimination or, using the *McDonnell Douglas* framework, by presenting circumstantial evidence from which a jury may infer a discriminatory motive underlying an adverse employment action." *Perkins v. ABF Freight Systems, Inc.*, No. 97–6126, 1998 WL 739816, *2 (6th Cir. Oct.6, 1998) (citing *Kline*, 128 F.3d at 348).

### i. Whether Plaintiff Burton has direct evidence of racial discrimination

In a thoughtful opinion, Judge Gerald E. Rosen explained that, "the issue of what constitutes 'direct evidence' of discrimination has created a degree of confusion in the courts." *Hoffman v. Sebro Plastics, Inc.*, 108 F.Supp.2d 757, 768 (E.D.Mich.2000). In an effort to bring clarity to a murky issue, Judge Rosen looked to the recent opinion of *Wright v. Southland Corp.*, 187 F.3d 1287 (11th Cir. 1999), in which the Eleventh Circuit sought to resolve the "substantial confusion" created by the "indiscriminate use of the term 'direct evidence'" in employment discrimination cases. *Id.* at 1293. Based on the analysis in *Wright*, Judge Rosen concluded that the term "direct evidence" takes on a different meaning in the employment discrimination context than in the law of evidence. *See Hoffman*, 108 F.Supp.2d at 768–71. According to the Eleventh Circuit in *Wright*, "'direct evidence' in the context of employment discrimination law means evidence from which a reasonable trier of fact could find more probably than not, a causal link between an adverse employment action and a protected personal characteristic." 187

F.3d at 1293; *see Hoffman*, 108 F.Supp.2d at 770–71. This definition contrasts with the well-established meaning of "direct evidence" in the law of evidence, namely "evidence, which if believed, proves existence of fact in issue without inference or presumption." *Wright*, 187 F.3d at 1293 (citing *Black's Law Dictionary* 460 (6th ed.1990)); *see Hoffman*, 108 F.Supp.2d at 768.

After the Eleventh Circuit's opinion in *Wright* but before Judge Rosen's opinion in *Hoffman*, the Sixth Circuit concluded, without analysis, that the definition of "direct evidence" in the employment discrimination context is the same as in the law of evidence context. In *Laderach v. U–Haul of Northwestern Ohio*, 207 F.3d 825 (6th Cir.2000), the Sixth Circuit cited the following language with approval:

"In discrimination cases, direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering–Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir.1999) (citations omitted). *See Norbuta v. Loctite Corp.*, 181 F.3d 102 (6th Cir.1999) (unpublished) ("[D]irect evidence proves the existence of a fact without any inferences or presumptions."). *See also Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1081 (6th Cir.1994) (evidence that requires the jury to infer a fact is not direct evidence).

*Id.* at 829. Thus, the Sixth Circuit appears to have rejected the standard articulated in *Wright* and echoed in *Hoffman*. The Supreme Court explained that "motivating factor" means that, "if we asked the employer at the moment of the [employment] decision what its reasons were and if we received a truthful response, one of those reasons would be that the ... em-

ployee" was a member of a racial minority. *Price Waterhouse v. Hopkins*, 490 U.S. 228, 250, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989); *see Laderach*, 207 F.3d at 829.

Here, Plaintiff Burton has produced evidence that Defendant's management had an overtly racist policy to employ fewer black workers and more immigrant Jewish and Hispanic workers. (*See* Pls. Ex. 1 (Kniss Aff.) ¶ 3.) Because the Court must view this evidence in a light most favorable to Plaintiff Burton, this Court concludes that a jury could conclude, without inference, that unlawful discrimination was a motivating factor in terminating Plaintiff Burton. If a plaintiff " 'shows direct evidence that, if believed by a jury, would be sufficient to win at trial,' summary judgment is inappropriate." *Evans v. Toys R Us–Ohio, Inc.*, 32 F.Supp.2d 974, 984 (S.D.Ohio 1999) (quoting *Lane v. Ogden Entertainment, Inc.*, 13 F.Supp.2d 1261, 1274 (N.D.Ala.1998)); *see Perkins*, 1998 WL 739816, *2. Therefore, this Court rejects Defendant's second argument in support of the Motion for Summary Judgment.

### ii. Whether Plaintiff Burton has circumstantial evidence of racial discrimination

If there were no direct evidence of race discrimination, the Court would apply the test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Under this framework, Plaintiff Burton first must establish a prima facie case of discrimination. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. If Plaintiff Burton is able to establish a prima facie case, a presumption of discrimination is created and the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the employ-

ee's rejection." *Id*. If Defendant carries this burden, then Plaintiff Burton must prove that the proffered reason was actually a pretext to hide unlawful discrimination. *Id*.

Plaintiff Burton may establish that the proffered reason was a mere pretext by showing that (1) the stated reasons had no basis in fact; (2) the stated reasons were not the actual reasons; and (3) the stated reasons were insufficient to explain Defendant's action. *See Wheeler v. McKinley Enterprises*, 937 F.2d 1158, 1162 (6th Cir. 1991). "A reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

Even if Plaintiff Burton's evidence of Defendant's racist employment policy were not sufficient direct evidence, Plaintiff Burton has presented circumstantial evidence from which a jury could conclude that Defendant's decision to terminate Plaintiff Burton was motivated by race. Often in these sorts of cases, the circumstantial evidence takes the form of statistics of hirings or firings rather than evidence of a working environment so saturated with racial antagonism. Although Defendant has asserted a nondiscriminatory justification for terminating Plaintiff Burton's employment, Plaintiff has sufficient evidence from which a jury could conclude that Defendant's stated reasons either were not the actual reasons or were insufficient to explain Defendant's action. Therefore, this Court will deny Defendant's Motion For Summary Judgment as to Plaintiff Burton's claims.

### 3. Plaintiff Davis' Section 1981 Claim

Defendant argues that Plaintiff Davis failed to exhaust her remedies under

the collective bargaining agreement, which requires the filing of a grievance if a dispute arises. Therefore, according to Defendant, she has no dispute under Section 1981 for improper performance or termination of her contract or for "enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981. "It is well established that a union member must exhaust all extra-judicial procedures before there exists recourse to the courts." *Harrington v. Chrysler Corp.*, 303 F.Supp. 495, 497 (E.D.Mich.1969). While this general principle typically applies in a case brought under the Labor Management Relations Act of 1947, this Court can find no reason why it should not also apply to a claim brought under Section 1981. Furthermore, in response, Plaintiff Davis has not presented any reasons why the general exhaustion requirement should not apply to the circumstances presented by this case or why submitting to extra-judicial procedures procedure would be futile. Therefore, this Court will grant Defendant's motion as to Plaintiff Davis and will dismiss her claims without prejudice for failure to exhaust remedies under the collective bargaining agreement.[3]

## III. CONCLUSION

Accordingly, this Court being fully advised in the premises,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment [Docket Entry 30] is **GRANTED** as to Plaintiff Aimee Davis' claims for relief and **DENIED** as to Plaintiff Michael Burton's claims for relief.

---

**3.** The Court notes that it appears that Plaintiff Davis cannot satisfy the first element of a claim under Section 1981—namely being a member of a racial minority—although the

**IT IS FURTHER ORDERED** that Plaintiff Aimee Davis's claims for relief are **DISMISSED** without prejudice.

**SO ORDERED.**

---

Court need not reach the issue after having concluded that she failed to exhaust her remedies under the collective bargaining agreement.