James L. McCUNE, Plaintiff–Appellant,

v.

The CITY OF GRAND RAPIDS, a municipal corporation; Francis Pierce; Gerald Steele; John Doe; and Richard Roe, Defendants–Appellees.

No. 87–1105.

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 25, 1988.

Decided March 25, 1988.

Walter L. Harrison (argued), Grand Rapids, Mich., for plaintiff-appellant.

G. Douglas Walton (argued), Deputy City Atty., Grand Rapids, Mich., for defendants-appellees.

Before MILBURN and GUY, Circuit Judges, and CONTIE, Senior Circuit Judge.

CONTIE, Senior Circuit Judge.

James L. McCune appeals from the district court's judgment dismissing McCune's complaint in its entirety. For the following reasons, we affirm the district court's judgment in part, vacate the district court's judgment in part, and remand this case for further proceedings consistent with this opinion.

## I.[1]

Appellant James L. McCune was employed as a Grand Rapids Parks Patrol Officer from August of 1978 through the latter part of 1980. The Grand Rapids Police Department and the Grand Rapids Parks Department supervised appellant's work as a parks patrol officer. Apparently, appellee the City of Grand Rapids maintains both departments.

At the request of appellee Francis Pierce, a police officer who was acting deputy chief of police or acting chief of police for appellee the City of Grand Rapids at all times relevant to the instant case, McCune agreed to act as an undercover officer to investigate burglaries, armed robberies, and transactions in illegal controlled substances. In the course of his duties as an undercover officer, appellant regularly reported to Pierce concerning the extent of drug activity appellant observed. Also, in the course of his duties as an undercover officer, appellant on one occasion gave Pierce $1200 cash which was appellant's share in one of the robberies with which he was subsequently charged. Appellant understood that the cash proceeds would be used as evidence against the robbers. Finally, in the course of his duties as an undercover officer appellant kept a detailed notebook from which he reported to Pierce.

In April of 1981, officers employed by the City of Walker, Michigan, the Kent County Sheriff's Department, and the City of Grand Rapids arrested McCune in the city of Walker. Appellant was charged with approximately seven counts of armed robbery, conspiracy to commit armed robbery, and breaking and entering. Appellee Pierce was present when appellant was arrested. Pierce made no attempt to stop the arrest or to inform the arresting officers that appellant's activity giving rise to the charges was done in furtherance of appellant's duties as an undercover officer.

Appellee Gerald Steele who was a police officer and acting deputy chief of police at all times relevant to the instant case came into possession of McCune's notebook which detailed his undercover activities. Steele hid the notebook to prevent the exculpatory evidence contained therein from being produced.

After McCune's arrest in April of 1981, he was incarcerated in the Kent County Jail. Appellant posted bond on May 22, 1981, and subsequently fled Michigan in fear of his life. Appellant turned himself in to the Federal Bureau of Investigation (F.B.I.) on March 22, 1982. Thereafter, he was incarcerated until on or about February 11, 1983. All charges against appellant were dropped on September 12, 1983.

On June 17, 1985, McCune filed a complaint in the United States District Court for the Western District of Michigan. The complaint alleges that appellees the City of

---

1. Because this is an appeal from the dismissal of the complaint, appellant's allegations are accepted as true.

Grand Rapids, Francis Pierce, Gerald Steele, John Doe and Richard Roe in concert and conspiracy knowingly and falsely caused McCune to be subjected to criminal prosecution and imprisonment. Appellant also alleges that appellee Gerald Steele secreted the notebook which contained evidence which exculpated appellant. Appellant alleges that as a result of these wrongs appellees deprived appellant of rights, privileges and immunities secured by the United States Constitution in violation of 42 U.S.C. § 1983. The district court dismissed McCune's complaint on December 30, 1986, holding that it had not been filed within the applicable three year statute of limitations.

McCune filed this timely appeal. This court must decide whether the district court erred in dismissing appellant's complaint in its entirety for failure to comply with the statute of limitations.

## II.

In *Wilson v. Garcia,* 471 U.S. 261, 276–280, 105 S.Ct. 1938, 1947–1950, 85 L.Ed.2d 254 (1985), the Supreme Court held that the appropriate statute of limitations to be applied in all section 1983 actions is the state statute of limitations governing actions for personal injury. Subsequently, in *Carroll v. Wilkerson,* 782 F.2d 44, 45 (6th Cir.), *cert. denied,* — U.S. ——, 107 S.Ct. 330, 93 L.Ed.2d 302 (1986), this court held that Michigan's three year statute of limitations for personal injury claims, Mich.Comp. Laws Ann. § 600.5805(8) (West 1987), governs section 1983 actions when the cause of action arises in Michigan. In the instant case, since the cause of action arose in Michigan, the applicable statute of limitations is Michigan's three year statute of limitations for personal injury claims.

■ The more critical question for the purposes of this appeal concerns when appellant's section 1983 cause of action accrued. Although *Wilson* held that state law provides the statute of limitations in section 1983 actions, it also reaffirmed that federal law and not state law is relevant for the purpose of characterizing a section 1983 claim. *Wilson,* 471 U.S. at 268–71,

105 S.Ct. at 1943–45. Accordingly, federal law governs the question of when that limitations period begins to run. *Sevier v. Turner,* 742 F.2d 262, 272 (6th Cir.1984). In *Sevier,* this court held that the statute of limitations begins to run when the plaintiff knows or has reason to know of the injury which is the basis of his action and that a plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence. *Id.* at 273. In *Dunn v. Tennessee,* 697 F.2d 121, 126–27 (6th Cir.1982), *cert. denied,* 460 U.S. 1086, 103 S.Ct. 1778, 76 L.Ed.2d 349 (1983), this court considered the definition of malicious prosecution of the state in which the claim arose for the purpose of defining the injury to a section 1983 plaintiff to determine when the plaintiff's cause of action accrued. As this court has recently noted, however, "although state law may be considered to the extent it is not inconsistent with federal law, federal law controls for the purpose of characterizing section 1983 claims." *McMaster v. Cabinet for Human Resources,* 824 F.2d 518, 520 (6th Cir.1987).

■ Appellant contends that the actions of appellees resulted in appellant's wrongful arrest, wrongful incarceration, wrongful criminal prosecution, and wrongful suppression of exculpatory evidence. He argues that these wrongful actions constitute a continuing tort. Appellant claims, therefore, that his section 1983 cause of action did not accrue until the continuing wrongful conduct ceased.

This court has not addressed the question of what constitutes a continuing tort in the context of section 1983 actions. Other jurisdictions, however, have addressed this question. In *Ward v. Caulk,* 650 F.2d 1144, 1147 (9th Cir.1981), the Ninth Circuit reasoned in the context of an action based *inter alia* on section 1983 that "[a] continuing violation is occasioned by continual unlawful acts, not by continual ill effects from an original violation." The court in *Ward* held that continuing non-employment resulting from an original action is not a continual violation.

Relying on the reasoning in *Ward*, the Third Circuit in *Sandutch v. Muroski*, 684 F.2d 252, 254 (3d Cir.1982), rejected the appellant's argument, similar to the argument made before this court, that his continuing incarceration constituted a continuing tort because as long as he continued to be incarcerated he continued to suffer the injury of false imprisonment.

In *Singleton v. City of New York*, 632 F.2d 185, 191 & n. 5 (2d Cir.1980), *cert. denied*, 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981), the Second Circuit rejected the appellant's argument that section 1983 suits may not contain more than one cause of action and that, therefore, the appellant's claims of assault and false arrest accrued at the time of the accrual of his claim of malicious prosecution. The court stated that it saw no reason for numerous claims for relief under section 1983 to be considered to have accrued on the same date.

Moreover, in *Compton v. Ide*, 732 F.2d 1429, 1432–33 (9th Cir.1984), the Ninth Circuit rejected the appellant's argument that the continuance of a conspiracy beyond the date when injury or damage occurs extends the statute of limitations in a section 1983 action. The court held that "[t]he existence of a conspiracy does not generally postpone accrual of causes of action arising from the conspirators' separate wrongs." *Id.* at 1433. *Accord Singleton*, 632 F.2d at 192.

Applying these standards to the existing facts, appellant's argument that the actions of appellees constitute a continuing tort must fail. Under *Sandutch*, appellant's claim of wrongful continued incarceration constitutes an ill effect from his false arrest. Moreover, under *Singleton*, the false arrest, malicious prosecution, and wrongful suppression of exculpatory evidence constitute discrete wrongs (i.e., separate torts with separate elements), and they will not be viewed by this court as a continuing

violation. Finally, under *Compton* the existence of a conspiracy does not postpone accrual of appellant's separate claims.[2] We will, therefore, examine each claim to determine whether it is barred by the applicable statute of limitations.

■ Appellant's first contention, that he was wrongfully arrested, is tantamount to a claim of false arrest. When the claim is for false arrest, a section 1983 cause of action accrues on the date the arrest was made. *Sandutch*, 684 F.2d at 254; *Singleton*, 632 F.2d at 191.[3] In the instant case, appellant was first arrested in April of 1981. At this time, he knew or had reason to know of the injury which is the basis of his claim of false arrest. The claim of false arrest filed on June 17, 1985, over four years later, is, therefore, barred by the applicable three year statute of limitations. Even if we were to consider appellant's second imprisonment as a discrete act of false arrest, the statute of limitations would bar the action. Appellant turned himself in to the F.B.I. on March 22, 1982. At this time, he knew or had reason to know of the injury which may form the basis of a second claim of false arrest. The claim of false arrest filed on June 17, 1985, over three years later, is, therefore barred by the applicable three year statute of limitations even considering appellant's possible second claim.

■ In reaching our conclusion, we have considered whether appellant's incarceration tolled the statute of limitations. The Supreme Court has held that state tolling rules govern section 1983 causes of action except when they are inconsistent with the federal policy underlying section 1983. *Board of Regents v. Tomanio*, 446 U.S. 478, 483–86, 100 S.Ct. 1790, 1794–96, 64 L.Ed.2d 440 (1980). The Michigan tolling statute, Mich.Comp.Laws Ann. § 600.5851, provides that if the person first entitled to bring an action is imprisoned at

---

**2.** We note that neither the appellant in *Compton* nor appellant in the instant case alleged a violation of 42 U.S.C. § 1985.

**3.** In a recent unpublished opinion, this court has also held that a claim of false arrest in a

section 1983 cause of action accrues on the date the arrest was made. *Davis v. Shelby County, Tennessee*, 815 F.2d 702 (6th Cir.1987) (unpublished).

the time his claim accrues, he shall have one year after his disability is removed to bring the action although the period of limitations has run. In the instant case, appellant was imprisoned at the time of both false arrests. Appellant's disability was removed in the first instance when he was released on bond on May 22, 1981 and in the second instance when he was released on February 11, 1983. Because on both of these dates the applicable statute of limitations had over one year to run, Michigan's tolling statute does not aid appellant.

> [F]alse arrest consists of an unlawful and total detention or restraint on one's freedom of locomotion, imposed by force or threats.... A false arrest is one means of committing a false imprisonment, but a false imprisonment may be committed without an arrest, and a distinction has been drawn between the two in that a false arrest must be committed under assumption of legal authority whereas a false imprisonment may be committed without any pretense of legal authority.... False arrest is synonymous with false imprisonment where one confines another purporting to act by authority of law which does not in fact exist.

35 C.J.S. *False Imprisonment* §§ 1-2 at 621-24 & n. 5 (1960) (some footnotes omitted). Thus, for the purposes of this case, false arrest is synonomous with false imprisonment. Nevertheless, in light of the complaint as a whole, we have construed appellant's second contention, that the actions of appellees resulted in appellant's wrongful incarceration, to mean wrongful continued incarceration. As we have noted, appellant's wrongful continued incarceration constitutes an ill effect from the original false arrest. *Sandutch*, 684 F.2d at 254. As such, it is not independently actionable.

■ Appellant's third claim is for malicious prosecution. In *Dunn*, this court held that favorable termination of the prior (i.e., underlying) criminal proceeding marks the point at which a section 1983 claim for malicious prosecution accrues. *Dunn*, 697 F.2d at 127. In the instant case, all charges against appellant were dropped on September 12, 1983. The claim of malicious prosecution filed on June 17, 1985, less than two years later, is not barred by the applicable three year statute of limitations.

■ Finally, appellant's fourth claim is for wrongful suppression of exculpatory evidence. Because the underlying criminal proceeding terminated in appellant's favor, he has not been injured by the act of wrongful suppression of exculpatory evidence. Therefore, appellant has failed to state an independent claim based on this act of suppression. Of course, the wrongful suppression of exculpatory evidence may be relevant to appellant's claim of malicious prosecution.

For the foregoing reasons, the district court's judgment is AFFIRMED in part, VACATED in part, and this case is REMANDED to the district court for further proceedings consistent with this opinion.

RALPH B. GUY, Jr., Circuit Judge, concurring in result only.

I think the court is clearly correct on the malicious prosecution issue and, since by keeping this claim alive we give the plaintiff his day in court on this strange episode, I am willing to concur in the result. I am concerned about other aspects of this decision, however, including questions implicitly raised but not answered.

Although the parties to this appeal do not discuss it, the root of the problem presented lies in the undefined overlap between state common law tort actions and federal civil rights actions brought pursuant to the provisions of 42 U.S.C. § 1983. Ever since the Supreme Court made clear in *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), that "[t]he federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked," *id.* at 183, 81 S.Ct. at 482, the federal courts have had to grapple with the interrelationship of state and federal laws. If state exhaustion were a prerequisite, the accrual date of a federal cause of action would be clear. But because the federal cause of action is tied to the alleged wrong

and not the failure, inadequacy, or absence of state procedures, we must deal with questions such as are presented here. *Monroe v. Pape* is also primarily the source of our having to deal with state wrongs which have no unique federal aspect to them. Justice Frankfurter's fears enunciated in his dissent in *Monroe* have all come true; once "color of law" was equated with any action by a public official, whether such action was right or wrong, authorized or unauthorized, the federal courts became largely enforcers of state tort law. In an attempt to get out from under the resulting avalanche of cases, we appear now to be in the business, from the Supreme Court on down, of finding ways to limit this application of section 1983 in a manner paralleled only by the attempts to limit the effects of the fourth amendment's exclusionary rule.

It is clear, as the court points out in this case, that whatever may be this plaintiff's cause of action and whenever it may have accrued the period of limitations is three years. What is not clear, however, is just what is his cause of action.

Prior to *Wilson v. Garcia,* when statute of limitations questions arose in the context of section 1983 litigation, this circuit allowed the plaintiff's complaint to be parsed. Each identifiable separate wrong alleged in the complaint would be judged by its own most analogous state statute of limitations. Thus, for example, an excessive force claim might be analogized to a state assault and battery claim and assigned a three-year statute of limitations, while the companion false arrest claim might be subject to the state's one-year false imprisonment statute. However, now that each wrong alleged in the section 1983 action is subject to the *same* limitations period, it is no longer as clear as it once may have seemed that all related wrongdoing should not now be considered as one cause of action. This is particularly true in the context of a case such as this where it cannot be demonstrated that any wrong was committed until this plaintiff was in some way vindicated of the state criminal charges. Where the claim of one implicated in a state's criminal justice system is that he is innocent, and that innocence is what makes the state action wrongful, it makes little sense to require a federal suit to be filed until innocence or its equivalent is established by the termination of the state procedures in a manner favorable to the state criminal defendant. More so than in Michigan, this would be particularly true in a state such as Ohio where this court has concluded that the statute of limitations for section 1983 actions is one year. *See Mulligan v. Hazard,* 777 F.2d 340 (6th Cir. 1985), *cert. denied,* 476 U.S. 1174, 106 S.Ct. 2902, 90 L.Ed.2d 988 (1986).

I would suggest that the rule the court applies in this case simply will not suffice. If the vindication of a defendant in a state criminal proceeding is a necessary ingredient to his ability to establish a section 1983 claim, then *none* of the claims that are dependent on vindication should accrue until vindication occurs.

On the other hand, if the claims, though they are a part of what might be viewed as a related series of events, have a basis not dependent on vindication, then the cause of action should accrue when the event occurs. For example, if police use excessive force in making an arrest, a section 1983 claim will lie that is independent of the guilt or innocence of the party arrested and the statute should start to run from the day of the beating for that particular claim.

We are already on record in this circuit that a section 1983 action will not lie where resolution of the claim involves a collateral attack on a state court conviction, and that, in such a circumstance, a plaintiff must first seek habeas relief. *Hadley v. Werner,* 753 F.2d 514 (6th Cir.1985). Another way of stating the *Hadley* rule is that if vindication is necessary to your claim, you have no claim until you are vindicated. The status of a plaintiff's claim while he seeks vindication is still in limbo in this circuit. We visited this issue again in *Jones v. Shankland,* 800 F.2d 77 (6th Cir. 1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 2177, 95 L.Ed.2d 834 (1987), but the court found it unnecessary to resolve this question since the plaintiff waited more than the period of limitations *after* vindication before filing suit.

It would appear there are three ways this matter could be resolved. We could treat the section 1983 action as viable before vindication and a district court would abstain pending resolution of the related state proceeding keeping the case alive on its docket. Alternately, the case could be dismissed without prejudice pending vindication, but this would not protect the plaintiff from the running of a limitations period unless we also concluded that a dismissal without prejudice amounts to a tolling of the statute of limitations. Finally, we could, as I suggest, conclude that the section 1983 cause of action does not accrue until vindication. Under any of the three proposals there is the possibility that a federal court will one day find itself litigating a very old claim. However, the approach which I suggest at least has the virtue of keeping a district court's docket clear of old cases that are inactive. Furthermore, there is a possibility that after vindication a potential plaintiff will never bother to file suit, whereas if he already had a suit pending, he may be more likely to pursue it.

Another alternative arises when money damages are the object of a section 1983 suit. We might have to go back and revisit our decision in *Hadley v. Werner*. *Hadley* was bottomed on *Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). *Preiser* dealt only with equitable relief, however, and really stands for little more than the fact that one cannot duck state exhaustion requirements by dressing up a habeas petition as a section 1983 action. When the *Hadley* Court dismissed the plaintiff's case without prejudice, it may have thought it was preserving a remedy for the plaintiff, but a dismissal without prejudice does not in and of itself toll the running of a statute of limitations. Thus, we are left, or more correctly, plaintiffs are left, with a no man's land as to the status of their section 1983 actions while they march down the often lengthy road to vindication.

As I stated at the outset, no great harm is done to this plaintiff since he gets anoth-er bite at the apple. Furthermore, his claim is not really that he committed no crimes but, rather, that he was "authorized" to do so. Thus, his claim sounds less in innocence than it does in desertion by the police officers who allegedly put him up to it. Thus, this may not be a good example of a true "vindication" case. In any event, this court will have to address at another day the implications of *Hadley*, *Jones*, and this decision.