Thurman TACKETT, Plaintiff,

v.

MARION COUNTY FAIR BOARD,
et al., Defendants.

No. 3:02–CV–7486.

United States District Court,
N.D. Ohio,
Western Division.

June 26, 2003.

J.C. Ratliff, Marion, OH, for Thurman Tackett, Plaintiff.

Nick C. Tomino, Tomino & Latchney, Medina, OH, for Marion County Fair Board, Marion County Agricultural Society, Gerald Criswell, Candace Sawyer, Defendants.

## ORDER

CARR, District Judge.

Plaintiff Thurman Tackett brings this action against defendants Marion County Fair Board ("Fair Board"), Marion County Agricultural Society ("Society"), Gerald Criswell, and Candace Sawyer, asserting claims under 42 U.S.C. § 1983, 42 U.S.C. § 1981, and Ohio law. This court has jurisdiction pursuant to 28 U.S.C. § 1331. Pending is defendants' motion for summary judgment. For the following reasons, defendants' motion shall be granted as to plaintiff's claims under §§ 1983 and 1981. This court declines to exercise jurisdiction over plaintiff's remaining claim.

## BACKGROUND

Plaintiff is self-employed as a horse trainer. In 1994, while plaintiff was training a horse at the Marion County Fairgrounds in Marion County, Ohio, he was involved in a fight with another man. As a result, on August 24, 1994, plaintiff was charged with Aggravated Menacing. He was found guilty in Marion County Municipal Court on October 7, 1994.

Plaintiff's altercation was discussed at a Fair Board meeting on September 13, 1994. The Fair Board, which governs the Society that manages and controls the Fairgrounds, banned plaintiff from the Fairgrounds. On September 14, 1994, Virgil Hite, the president of the Fair Board, sent a letter to plaintiff reading, "On September 13, 1994, the Marion County Fair Board took action to ban you from the Marion County Fairgrounds, including the horse barns. Any violation of this order will result in immediate notification of the proper authorities." (Doc. 12, Exh. E). A Deputy Sheriff delivered the letter to plaintiff on October 25, 1994. Plaintiff called Hite, who told plaintiff to remove his

belongings from the Fairgrounds by October 30, 1994. Plaintiff complied.

Plaintiff's polling place is at the Fairgrounds. In the Fall of 1995, the Marion County Prosecuting Attorney, Jim Slagle, was running for re-election and contacted plaintiff about placing a campaign sign in plaintiff's yard. During this conversation, Slagle told plaintiff that the Fair Board could not ban plaintiff from the Fairgrounds. A day or so later, plaintiff showed the September 14, 1994, letter to Slagle, who again told plaintiff that the Fair Board could not ban plaintiff and that he could vote at the Fairgrounds. About a month later, plaintiff visited Marion County Commissioner Kirk Moreland, who also told him that the Fair Board could not ban him from the Fairgrounds.

Plaintiff did not vote in the 1994 or 1995 elections held at the Fairgrounds, but voted in the general elections of 1996 and 1997. Plaintiff also began attending the Marion County Fair after these conversations. During this time, plaintiff kept his horse at a barn in Upper Sandusky, Ohio, and did not attempt to train horses at the Fairgrounds.

On September 13, 1998, plaintiff spoke to defendant Sawyer, the secretary of the Society, about renting horse stalls at the Fairgrounds. She told him that she could not rent any stalls to him because he was banned from the Fairgrounds. On September 16, 1998, defendant entered the Fairgrounds to train a horse. Defendant showed the letter banning plaintiff from the Fairgrounds to the deputy sheriff. The deputy issued a citation for trespassing to the plaintiff. This citation later was dismissed without prejudice.

In December, 1998, plaintiff filed suit against the defendants in the Marion County Court of Common Pleas. On September 4, 2001, the suit voluntarily was dismissed pursuant to OHIO R. CIV. P. 41(A). On September 4, 2002, plaintiff filed this action in the Marion County Court of Common Pleas pursuant to the savings statute, O.R.C. § 2305.19, alleging violations of 42 U.S.C. § 1983, 42 U.S.C. § 1981, and malicious prosecution. Defendants removed the action to this court.

## STANDARD OF REVIEW

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. 2548. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)(quoting Fed.R.Civ.P. 56(e)).

Once the burden of production shifts, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is insufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548.

In deciding the motion for summary judgment, the evidence of the non-moving party will be believed as true, all doubts will be resolved against the moving party,

all evidence will be construed in the light most favorable to the non-moving party, and all reasonable inferences will be drawn in the non-moving party's favor. *Eastman Kodak Co. v. Technical Servs., Inc.,* 504 U.S. 451, 456, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992). Summary judgment shall be rendered only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

## DISCUSSION

### I. 42 U.S.C. § 1983 Claims

#### A. Plaintiff's Ban From Fairgrounds

Plaintiff's first claim against defendants Fair Board and Society alleges that the September 14, 1994, ban barring him from the Fairgrounds violated 42 U.S.C. § 1983 [1] by interfering with his constitutional rights as guaranteed by the First, Fifth, and Fourteenth Amendments to the Constitution. Defendants argue that this claim is barred by the statute of limitations.

 The statute of limitations for § 1983 actions arising in Ohio is two years. *Browning v. Pendleton,* 869 F.2d 989, 990 (6th Cir.1989). The date of onset of the limitations period in a § 1983 action is a question of federal law. *Sevier v. Turner,* 742 F.2d 262, 272 (6th Cir.1984).

 Plaintiff's discovery of his legal rights is not equivalent to his discovery of the facts of his injury; the statute of limitations begins to run when a plaintiff knows of his injury and its cause. *United*

States v. Kubrick, 444 U.S. 111, 123, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979); *Mounts v. Grand Trunk W. R.R.,* 198 F.3d 578, 581 (6th Cir.2000); *see also Sevier,* 742 F.2d at 273 (citations omitted) ("The statute of limitations commences to run when the plaintiff knows or has reason to know of the injury which is the basis of his action. A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence"). This test is objective. *Sharpe v. Cureton,* 319 F.3d 259, 266 (6th Cir.2003).

In *Kubrick,* the Court stated:

We are unconvinced that for statute of limitations purposes a plaintiff's ignorance of his legal rights and his ignorance of the fact of his injury or its cause should receive identical treatment. That he has been injured in fact may be unknown or unknowable until the injury manifests itself; and the facts about causation may be in the control of the putative defendant, unavailable to the plaintiff or at least very difficult to obtain. The prospect is not so bleak for a plaintiff in possession of the critical facts that he has been hurt and who has inflicted the injury. He is no longer at the mercy of the latter. There are others who can tell him if he has been wronged, and he need only ask.

444 U.S. at 122, 100 S.Ct. 352.

 To determine when a cause of action accrues in § 1983 actions, courts in the Sixth Circuit apply this discovery rule, and determine the event that should have alerted the typical lay person to take steps to protect his or her rights. *Dixon v. Anderson,* 928 F.2d 212, 215 (6th Cir.1991)

---

1. Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the de-privation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

(*citing Conlin v. Blanchard,* 890 F.2d 811, 815 (6th Cir.1989)).

■ Plaintiff alleges that the event alerting him to protect his rights was his 1998 citation for trespassing. He argues that he relied on the 1995 conversations with Slagle and Moreland, and believed the ban was invalid and unenforceable until 1998, when the defendants enforced it. This argument is unavailing.

The event that should have alerted plaintiff of his injury was his receipt of the letter from the Fair Board in October, 1994. Indeed, the evidence shows that plaintiff realized the importance of the letter banning him from the Fairgrounds because, immediately after he received the letter, he contacted its author, Hite, for instructions on removing his effects from the stables.

Furthermore, the conversations in 1995 with Slagle and Moreland should have alerted plaintiff to the possible violation of his rights. Plaintiff should not have relied upon their statements and assumed he had suffered no injury; in fact, the opposite should have occurred. If plaintiff was not already aware of his rights by then, he should have been aware of them following those conversations, and understood that he could no longer sit on his rights. Plaintiff's claim that he has been prevented from voting at the Fairgrounds is without merit; the evidence shows that he voted at the Fairgrounds in 1996 and 1997, and was not cited for trespassing.

Plaintiff filed his first complaint arising from his ban from the Fairgrounds in 1998, after the two-year statute of limitations had run. Consequently, his § 1983 claims in this case are not saved by the Ohio savings statute because his 1998 claims were not timely filed, and must fail as a matter of law.

## B. Plaintiff's Ban From Stables

Plaintiff's third cause of action alleges that all four defendants—the Fair Board, the Society, Sawyer, and Criswell, who allegedly oversees the leasing of horse stalls at the Fairgrounds—discriminated against him by refusing to rent horse stalls to him. Plaintiff has not asserted a particular violation of federal or state law, but such a claim is, in effect, a claim that his constitutional right to equal protection of the laws was violated. Such claims are appropriately brought under 42 U.S.C. § 1983. As discussed *supra,* these claims have a two-year statute of limitations in Ohio, *Browning,* 869 F.2d at 990, and plaintiff did not timely file his § 1983 claim in state court.

## C. Continuing Violation

Plaintiff, alternatively, argues that the 1994 ban and the 1998 citation, together, constitute a continuing violation, thus saving his § 1983 claims from dismissal on limitations grounds. The Sixth Circuit, distinguishing a continuing violation from the continuing effect of a prior violation, has held that the statute of limitations accrues in response to a discriminatory act, not in response to the continuing effects of past acts. *Trzebuckowski v. City of Cleveland,* 319 F.3d 853, 858 (6th Cir. 2003) (*quoting Dixon,* 928 F.2d at 216, *and citing Cowell v. Palmer Twp.,* 263 F.3d 286 (3rd Cir.2001); *McCune v. City of Grand Rapids,* 842 F.2d 903 (6th Cir.1988)). The Sixth Circuit has recognized "continuing violations as falling under two categories of narrowly limited exceptions" to the general rule that the limitations period accrues at the time of the original act. *Dixon,* 928 F.2d at 216 (citation and quotations omitted).

■ The first type of continuing violation occurs "where there is some evidence of *present* discriminatory activity giving rise to a claim of a continuing violation[.]"

*Id.* at 216. This type of violation did not occur in *McCune,* where the court held that a claim of wrongful continued incarceration constituted an ill effect from an original false arrest, as opposed to a continual unlawful act; therefore, the cause of action accrued on the date that the false arrest was made. 842 F.2d at 906. Similarly, in *Dixon,* plaintiffs argued they suffered a continuing violation on each day they could not participate in a retirement program. The court reasoned that the plaintiffs endured only the continual ill effects of the original discriminatory act, not a continuing violation. *Dixon,* 928 F.2d at 216. In this case, plaintiff's citation for trespass was an ill effect of his 1994 ban, not a continuing violation.

■■ Plaintiff claims that the facts of this case establish the second type of continuing violation, which occurs where there is "a long-standing and demonstrable policy of discrimination." *Dixon,* 928 F.2d at 217 (*quoting EEOC v. Penton Indus. Publ'g Co.,* 851 F.2d 835, 838 (6th Cir. 1988)). To establish this type of violation, the evidence must show intentional discrimination against the class of which plaintiff was a member. *Sharpe,* 319 F.3d at 259 (*quoting Penton,* 851 F.2d at 838). Here, plaintiff has not alleged class-wide discriminatory conduct. The citation did not constitute a continuing violation.

■■ The continuing violations doctrine should not be used to relieve a person of the duty to pursue his or her legal rights. *Cowell,* 263 F.3d at 295 (citation omitted). The doctrine is used in more indeterminate situations, when the plaintiff might not know that he or she has been wronged. *West v. Phila. Elec. Co.,* 45 F.3d 744, 754 (3rd Cir.1995). The accrual date of a cause of action is more inflexible where there is a discrete trigger event and the discrimination is overt. *Id.* Here, the plaintiff's receipt of the 1994 letter was the discrete trigger event, and should have

alerted him to protect his rights. As noted, within one week of receiving the letter, plaintiff contacted Hite and removed his belongings from the Fairgrounds.

Plaintiff's § 1983 claims, asserted in his first and third causes of action, are time-barred because they accrued in 1994, four years before he filed his original complaint. Plaintiff's claims are not saved by the continuing violations doctrine, and defendants' motion for summary judgment as to the first and third claims must be granted.

## II. 42 U.S.C. § 1981 Claim

Plaintiff alleges that defendants' actions violated 42 U.S.C. § 1981. A six-year statute of limitations may apply in § 1981 cases; however, even if it does, plaintiff's claim fails as a matter of law.

Section 1981(a) (emphasis added) states:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by *white citizens,* and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

■■ Section 1981 provides "a federal remedy against discrimination in private employment on the basis of race." *Burton v. Plastics Research Corp.,* 134 F.Supp.2d 881, 885 (E.D.Mich.2001) (*quoting Johnson v. Ry. Express Agency, Inc.,* 421 U.S. 454, 459–60, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975)). The Sixth Circuit uses a three-part prima facie test to evaluate § 1981 claims arising from alleged discrimination in commercial establishments. The first element is whether plaintiff is a member of a protected class. *Christian v. Wal–Mart*

*Stores, Inc.*, 252 F.3d 862, 872 (6th Cir. 2001).

In this case, plaintiff is not alleging racial discrimination, nor has plaintiff, a Caucasian, presented any facts to indicate that he is a member of a protected class. Plaintiff's "discrimination" argument relies upon the allegation that the Fair Board has rented horse stalls to others who, like plaintiff, have been involved in fights at the Fairgrounds. Such a "class" of people, however, is not a protected class under § 1981. Plaintiff's § 1981 claim fails as a matter of law, and defendants' motion for summary judgment must be granted as to this claim.

### III. Malicious Prosecution

Plaintiff has asserted a claim for malicious prosecution against the Fair Board, the Society, and Sawyer, as a result of the criminal trespass citation issued to him on September 16, 1998. This court, in its discretion, declines to exercise jurisdiction over this state-law claim pursuant to 28 U.S.C. § 1367.

### CONCLUSION

Summary judgment must be granted as to plaintiff's § 1983 claims because they were not timely filed, and the facts do not establish a continuing violation. Summary judgment must be granted as to plaintiff's § 1981 claim because he is not alleging race discrimination, nor is he a member of a protected class. This court declines to exercise jurisdiction over plaintiff's malicious prosecution claim.

**It is, accordingly, ordered that:**

1) Defendants' motion for summary judgment be, and the same hereby is, granted as to plaintiff's federal claims; and

2) Plaintiff's claim for malicious prosecution is remanded without prejudice to the Court of Common Pleas for Marion County, Ohio.

**So ordered.**