**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 24-1314**

NA'IM ANDERSON,

        Plaintiff - Appellant,

      v.

BALTIMORE COUNTY, MARYLAND; STATE OF MARYLAND; OFFICE OF THE STATE'S ATTORNEY FOR BALTIMORE COUNTY; NICHOLAS WOLFERMAN; CHAD A. SHOLTER, in their individual and official capacities,

        Defendants - Appellees.

Appeal from the United States District Court for the District of Maryland, at Baltimore. James K. Bredar, Senior District Judge.  (1:23-cv-01842-JKB)

Submitted:  September 30, 2025                   Decided:  December 2, 2025

Before WYNN, THACKER, and HARRIS, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ON BRIEF:**  Latoya Francis-Williams, LAW OFFICE OF LATOYA A. FRANCIS-WILLIAMS, Randallstown, Maryland, for Appellant.  Anthony G. Brown, Attorney General, Wendy L. Shiff, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL OF MARYLAND, Baltimore, Maryland, for Appellees State's Attorney for Baltimore County and State of Maryland.  James R. Benjamin, Jr., Baltimore County Attorney, Bradley J. Neitzel, Senior Assistant County Attorney, BALTIMORE COUNTY OFFICE OF LAW, Towson, Maryland, for Appellees Baltimore County, Maryland;

Nicholas Wolferman; and Chad Sholter.

―――――――――

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Na'Im Anderson ("Appellant") alleged that he was stopped, arrested, and prosecuted for a marijuana offense, all without probable cause. So, he sued the officers; prosecutor; Baltimore County, Maryland; and the State of Maryland.

The district court concluded that the Amended Complaint failed to allege facts sufficient to bear out Appellant's conclusory allegations or to pierce the applicable immunities. As a result, the district court dismissed his Amended Complaint. We agree with the conclusions of the district court. Therefore, we affirm.

## I.

We recount the pertinent facts as they appear in Appellant's Amended Complaint and assume them true. *Prince v. Sears Holdings Corp.*, 848 F.3d 173, 176 (4th Cir. 2017) ("When reviewing the grant of a motion to dismiss, we assume all facts in the complaint as true and resolve all doubts in favor of the non-moving party.").

On July 13, 2021, Appellant was the backseat passenger in a car that was pulled over by Officer Nicholas Wolferman of the Baltimore County Police Department ("BCPD").[1]

Appellant's Amended Complaint alleges that he did not own the car, nor was he the driver. Appellant alleges that he brought nothing illegal into the car when he climbed in -- which, according to him, was just one minute prior to the stop. Appellant also alleges

---

[1] The Amended Complaint provides no other facts about the stop, not even the reason for it.

that he was unaware of any illegal substances in the car, and he could not access the locked glovebox or trunk.

Officer Wolferman searched the car, found what he suspected to be marijuana, and arrested everyone in the car.[2]  Officer Wolferman and his fellow BCPD officer, Chad Sholter, then filed a complaint charging Appellant with possession of marijuana.  For six months, Appellant was held without bail, from July 13, 2021 until January 13, 2022, when he was released to a home monitoring program and placed on pre-trial supervision.

In the period following Appellant's arrest, the BCPD experienced issues testing suspected contraband.  More specifically, the BCPD had been outsourcing all marijuana testing to National Medical Services ("NMS"), a Pennsylvania laboratory.  But on August 5, 2021 (three weeks after Appellant's arrest) Officers Wolferman and Sholter received a letter from the Maryland State Police, informing them that NMS would no longer be conducting such testing because NMS had issues certifying its chemists.  That left the BCPD unable to confirm that the suspected marijuana found in the subject vehicle was in fact marijuana.  However, neither the Officers nor the State's Attorney for Baltimore County ever disclosed this letter to Appellant.  Then, on January 18, 2022, NMS officially notified the State's Attorney that it was unable to determine whether the sample the BCPD had submitted was actually marijuana.  NMS also notified the State's Attorney that, unless

---

[2] The Amended Complaint is devoid of any allegations as to where the suspected marijuana was located in the subject vehicle.

asked not to do so, it would be discarding the subject sample in six weeks. No objection was made.

Appellant's charges were dismissed a year later on January 23, 2023. As a result of this failed prosecution, Appellant alleges that he "suffered physical and/or non-physical injury, sustained economic damages for the cost of medical/mental health care expenses and lost wages as well as non-economic damages for the pain, suffering, fear, fright, humiliation, inconvenience, embarrassment and severe emotional distress for the totality of the events that he was forced to endure." J.A. 60.[3]

Appellant filed suit in the Circuit Court for Baltimore County, Maryland on April 25, 2023. He sued the State's Attorney for Baltimore County ("State's Attorney"), the State of Maryland (the "State"), Officers Wolferman and Sholter (the "Officers"), and Baltimore County, Maryland (the "County") (collectively, "Appellees"). Appellees removed the case to the District of Maryland. Once in federal court, Appellant amended his complaint.

Appellant's Amended Complaint maintained the same defendants, and it included eight causes of action. These included common law claims for false arrest, false imprisonment, malicious prosecution, abuse of process, and the intentional infliction of emotional distress. The Amended Complaint also included a claim for an unreasonable search and seizure pursuant to the Fourth Amendment as well as Articles 24 and 26 of the Maryland Declaration of Rights. The Amended Complaint similarly alleged a claim for

---

[3] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

violations of the Fourth, Fifth, and Fourteenth Amendments, brought pursuant to 42 U.S.C. § 1983. Finally, the Amended Complaint asserted a *Monell*[4] claim.

Appellees moved to dismiss the Amended Complaint, and the district court granted their respective motions. It first held that the State's Attorney was entitled to absolute prosecutorial immunity and thus immune from suit. The district court then held that the State of Maryland could not be vicariously liable for any prosecutorial misconduct by the State's Attorney, as prosecutorial immunity extends to the State. Next, the district court held that Appellant failed to state any claim -- constitutional or common law -- against the Officers. Finally, the district court held that Appellant failed to state any claim against the County. The district thus dismissed the Amended Complaint in its entirety.

This timely appeal followed.

## II.

"We apply a de novo standard of review for appeals of . . . motions to dismiss for failure to state a claim." *Benjamin v. Sparks*, 986 F.3d 332, 351 (4th Cir. 2021). To survive a motion to dismiss, the underlying complaint "must contain sufficient facts to 'state a claim to relief that is plausible on its face.'" *Corder v. Antero Res. Corp.*, 57 F.4th 384,

---

[4] *Monell* allows plaintiffs to bring suit pursuant to 42 U.S.C. § 1983 and hold municipalities liable for their own unconstitutional acts, i.e., where the municipality itself inflicts the constitutional injury by adopting a "policy" or "custom" that is the "moving force" behind the constitutional injury. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694–95 (1978); *see also Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) ("[N]ot every deprivation of a constitutional right will lead to municipal liability. Only in cases where the municipality causes the deprivation 'through an official policy or custom' will liability attach." (quoting *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999), *abrogated on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010) (per curiam))).

6

401 (4th Cir. 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "When ruling on a Rule 12(b)(6) motion to dismiss, 'a judge must accept as true all of the factual allegations contained in the complaint.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). And, "like the district court, [we] draw all reasonable inferences in favor of the plaintiff." *Id.* (alteration in original) (quoting *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009)).

### III.

As set forth above, Appellant sued the Officers, the State's Attorney, the State, and the County. We begin by addressing whether the State's Attorney is entitled to prosecutorial immunity. We next consider whether the district court erred by dismissing the State. Finally, we consider whether the district court erred in holding Appellant had not stated any claim against the Officers or the County.

### A.

### The State's Attorney

Appellant's Amended Complaint alleges state law claims against the State's Attorney for malicious prosecution and abuse of process. In a nutshell, these claims allege the State's Attorney prosecuted Appellant without probable cause for the purpose of covering up the Officers' allegedly unlawful conduct. Appellant's Amended Complaint also brings federal constitutional claims against the State's Attorney. These claims are two-fold. First, Appellant alleges the State's Attorney violated his rights by failing to

7

disclose exculpatory evidence, known as "*Brady* evidence."[5]  Second, Appellant alleges the State's Attorney negligently failed to train the assistant prosecutors as to their obligation to disclose *Brady* evidence.

The district court dismissed each claim.  In doing so, the district court held that the State's Attorney enjoyed absolute prosecutorial immunity from suit for the complained of actions.  *See Savage v. Maryland*, 896 F.3d 260, 271 (4th Cir. 2018) (noting our "long line of cases holding prosecutors absolutely immune from claims that they have failed to meet their obligations to disclose exculpatory evidence"); *State v. Rovin*, 246 A.3d 1190, 1207 (Md. 2021) (recognizing, "as a matter of Maryland common law, that prosecutors enjoy absolute immunity with respect to claims arising from their role in the judicial process" (citation and internal quotation marks omitted)).

Although Appellant asserts the district court erred by dismissing the State's Attorney, Appellant's opening brief did not develop any argument challenging this aspect of the district court's decision.  Appellant has, therefore, waived the issue.  *Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) ("A party waives an argument by failing to present it in its opening brief or by failing to develop [its] argument—even if [its] brief takes a passing shot at the issue." (internal quotation marks omitted) (alterations in original) (quoting *Brown v. Nucor Corp.*, 785 F.3d 895, 923 (4th Cir. 2015))).

---

[5] *Brady v. Maryland*, 373 U.S. 83, 87 (1963) ("[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.").

But even the lone argument Appellant makes in his reply brief is unavailing. Indeed, he contends that the "withholding of potentially exculpatory evidence implicates the State's Attorney's administrative duty to establish proper disclosure procedures," as opposed to his role as an officer of the court, and thus falls beyond the sanctuary of prosecutorial immunity. Reply Br. at 4. In support, he cites to *Owens v. Balt. City State's Attorneys Office*, 767 F.3d 379, 396–97 (4th Cir. 2014), in which he claims that we "recognized that such failures in the disclosure process may fall outside the scope of absolute immunity." Reply Br. at 4. That is not accurate. The cited portion of *Owens* did not deal with prosecutorial immunity at all -- we were instead deciding whether *police officers* were entitled to *qualified immunity*.[6] *See Owens*, 767 F.3d at 395–401 ("We next consider the qualified-immunity defense asserted by Officers Pelligrini, Dunnigan, and Landsman.").

## B.

### The State of Maryland

We turn next to Appellant's claims against the State. In his Amended Complaint, Appellant alleged the State was vicariously liable for the State's Attorney's misconduct. The district court dismissed the claims against the State because prosecutorial immunity shielded the State's Attorney from liability, and that immunity extended to the State as well. The district court also held, in the alternative, that the State enjoyed sovereign immunity and was unamenable to suit pursuant to 42 U.S.C. § 1983.

---

[6] In fact, the phrase "prosecutorial immunity" appeared only once in *Owens*, and it was in a footnote discussing how the prosecutor-defendant had waived that defense by not raising it before the district court. *See Owens*, 767 F.3d at 393 n.4.

9

Appellants do not challenge these rulings on appeal. Instead, Appellant faults the district court for a different reason. As Appellant sees it, the district court erred by dismissing the State without first deciding whether Appellant had stated a negligence claim against the State. Appellant Br. at 28 ("The District Court reversibly erred in ignoring the record facts demonstrating Defendant State of Maryland's plausibility of liability via its own negligent failure to vet [NMS] labs before contracting with said lab to analyze suspected [controlled dangerous substances] in Maryland criminal cases.").

Critically, however, Appellant never filed a negligence claim against the State. Indeed, Appellant's operative complaint brought eight counts that ranged from malicious prosecution and abuse of process to violations of the Fourth, Fifth, and Fourteenth Amendments. But a negligence claim is nowhere to be found. To be sure, Appellant's Amended Complaint makes a few passing mentions of the State's alleged negligence in the factual allegations section. But those allegations were not mentioned at all when it came time for Appellant to actually allege his causes of action. And while courts liberally construe complaints drafted by non-lawyers, *United States v. Wilson*, 699 F.3d 789, 797 (4th Cir. 2012), they have no obligation to do so when a complaint is drafted by a licensed attorney. *See Smith v. Plati*, 258 F.3d 1167, 1174 (10th Cir. 2001); *see also Huffman v. Lindgren*, 81 F.4th 1016, 1020–21 (9th Cir. 2023) (collecting cases).

Therefore, the district court did not err by not addressing a claim that was never filed.

## C.

## The Officers

Having addressed Appellant's claims against the State's Attorney and the State itself, we now turn to his claims against the Officers. We quickly dispose of each.

### 1.

To start, because Appellant's brief consists of nothing more than conclusory statements in support of reversing the district court's dismissal of his abuse of process claim, we deem that issue waived and decline to consider it. *Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 653 n.7 (4th Cir. 2006) ("[C]onclusory remark[s] [are] insufficient to raise on appeal any merits-based challenge to the district court's ruling."); *see also* Fed. R. App. P. 28(a)(8)(A) (requiring the argument section of an appellant's opening brief to contain the "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies").

### 2.

Next, the district court properly dismissed Appellant's common law claims for false arrest, false imprisonment, and malicious prosecution. Each claim required Appellant to allege an absence of probable cause. *See Okwa v. Harper*, 757 A.2d 118, 133 (Md. 2000) ("For a successful cause of action based on false arrest or false imprisonment, the plaintiff must establish that the defendant deprived him or her of his or her liberty without consent

11

and without legal justification."[7] (internal quotation marks and citation omitted)); *Heron v. Strader*, 761 A.2d 56, 59 (Md. 2000) ("The elements of malicious prosecution are: 1) a criminal proceeding instituted or continued by the defendant against the plaintiff; 2) without probable cause; 3) with malice, or with a motive other than to bring the offender to justice; and 4) termination of the proceedings in favor of the plaintiff."). Appellant's Amended Complaint failed to clear even this low bar. Probable cause exists for an arrest when the "facts and circumstances [are] sufficient to warrant a prudent [person] in believing that the [suspect] had committed or was committing an offense." *Okwa*, 757 A.2d at 130 (first alteration supplied) (quoting *DiPino v. Davis*, 729 A.2d 354, 361 (Md. 1999)). So, to state any of these three claims, Appellant needed to "allege a set of facts which made it unjustifiable for a reasonable officer to conclude that" Appellant had or was about to commit a crime. *Brown v. Gilmore*, 278 F.3d 362, 368 (4th Cir. 2002). And those facts must be alleged from the officer's point of view. *Wengert v. State*, 771 A.2d 389, 398 (Md. 2001) ("Probable cause is to be determined based upon evaluation of 'facts, viewed from the standpoint of an objectively reasonable police officer.'" (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996))).

---

[7] Maryland's court of last resort has said, "[w]hen the cases speak of legal justification, we read this as equivalent to legal authority. . . . [T]he test whether legal justification exist[s] in a particular case [must be] judged by the principles applicable to the law of arrest." *Montgomery Ward v. Wilson*, 664 A.2d 916, 926 (Md. 1995) (quoting *Ashton v. Brown*, 660 A.2d 447, 472 (Md. 1995)). So where, as here, the plaintiff is arrested without a warrant, the arresting officer acts without legal justification when he lacks probable cause that a crime has been committed. Md. Crim. Proc. Code Ann. § 2-202.

But Appellant never alleged any facts about what the Officers did or did not know. Indeed, Appellant's entire argument that the Officers lacked probable cause depends upon the facts known to *him*. And Appellant's Amended Complaint never attempted to impute those facts on the Officers. Thus, Appellant failed to plead a lack of probable cause, and the district court properly dismissed his claims for false arrest, false imprisonment, and malicious prosecution.

Appellant also failed to make any non-conclusory allegations that the Officers had any decision making authority over his prosecution beyond making the initial arrest and charging decision. That forecloses any malicious prosecution claim based on post-arrest events.

We pause to note that, throughout this case, Appellant has relied heavily on *Pringle v. State*, 805 A.2d 1016 (Md. 2002), *rev'd Maryland v. Pringle*, 540 U.S. 366 (2003), where a Maryland state court held that officers lacked probable cause to arrest a passenger in a car that contained drugs. Continued reliance on this case by Appellant is confounding. What Appellant fails to reckon with -- despite the district court explicitly telling him[8] -- is that the Supreme Court *reversed* the Maryland state court's judgment and, in doing so, held that the arresting officer there had probable cause to arrest all the occupants of a car for possession of a controlled substance. *Pringle*, 540 U.S. at 374. In fact, the Supreme Court said:

---

[8] J.A. 220 (district court noting, "*Pringle* was overturned by the Supreme Court, which Anderson fails to note or address.").

13

> We think it an entirely reasonable inference from these facts that any or all three of the occupants [of the car] had knowledge of, and exercised dominion and control over, the cocaine. Thus, a reasonable officer could conclude that there was probable cause to believe Pringle committed the crime of possession of cocaine, either solely or jointly.

*Id.* at 372.  Appellant's counsel should know better -- and do better.

3.

We next address Appellant's constitutional claims against the Officers.  His brief purports to challenge the district court's dismissal of all of his federal and state constitutional claims.  *See* Appellant Br. at 36 ("The trial court erred in not viewing the well pled facts in a light most favorable to Appellant as his Amended Complaint sufficiently pleads Plaintiff's article 24 and 26 rights depravation [sic] claims; fabrication of evidence and § 1983 claim for violation of plaintiff's fourth, fifth and fourteenth amendment rights and privileges.").  However, Appellant only developed an argument challenging the dismissal of his *Brady* claim.  *See id.* at 36–38.  We cabin our review accordingly.[9]

"To make out a claim that the Officers violated his constitutional rights by suppressing exculpatory evidence, [a plaintiff] must allege . . . that (1) the evidence at issue was favorable to him; (2) the Officers suppressed the evidence in bad faith; and (3) prejudice ensued." *Owens*, 767 F.3d at 396–97 (footnote omitted).  "Prejudice ensues if

---

[9] Appellant has thus waived review of his allegations regarding any alleged violations of the Fourth and Fifth Amendments, Articles 24 and 26 of the Maryland Declaration of Rights, as well as his *Monell* claim.

14

'there is a reasonable probability' that the jury would have reached a different result had the evidence been properly disclosed." *Id.* at 397 (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)).

We agree with the district court that Appellant failed to plead a viable *Brady* claim, although we affirm on different reasoning. Prejudice is a required element of a *Brady* claim. Yet, Appellant's Amended Complaint negates this necessary ingredient. Indeed, his Amended Complaint states that all charges against him were dropped. That means Appellant received his desired result, and he therefore suffered no prejudice from any alleged suppression of exculpatory evidence. *McCune v. City of Grand Rapids*, 842 F.2d 903, 907 (6th Cir. 1988) (holding that a defendant suffers no prejudice from suppression of exculpatory evidence where the charges are dropped).

As a result, we affirm the dismissal of Appellant's *Brady* claim.

4.

That leaves Appellant's claim for the intentional infliction of emotional distress. To state a claim for the intentional infliction of emotional distress, a plaintiff must allege four elements: (1) the conduct must be intentional or reckless; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress must be severe. *Harris v. Jones*, 380 A.2d 611, 614 (Md. 1977). On the last element, the plaintiff must allege emotional distress "so severe that no reasonable man could be expected to endure it." *Id.* at 616 (quoting Restatement (Second) of Torts § 46 cmt. j. (1965)). That is, the plaintiff must allege that

15

he is no longer able "to function or to tend to necessary matters." *Haines v. Vogel*, 249 A.3d 151, 165 (Md. Ct. Spec. App. 2021) (internal quotation marks and citation omitted).

But Appellant never made that allegation. His Amended Complaint instead alleges only that he "suffered physical and/or non-physical injury, sustained economic damages for the cost of medical/mental health care expenses and lost wages as well as non-economic damages for the pain, suffering, fear, fright, humiliation, inconvenience, embarrassment and severe emotional distress for the totality of the events that he was forced to endure." J.A. 60. That may be. But Appellant did not allege his inability to function or tend to daily matters. And because relief for the intentional infliction of emotional distress is a "balm reserved for those wounds that are truly severe and incapable of healing themselves," *Hamilton v. Ford Motor Credit Co.*, 502 A.2d 1057, 1065 (Md. Ct. Spec. App. 1986), Appellant needed to make those allegations in order to state a claim.

Therefore, Appellant's claim for intentional infliction of emotional distress was appropriately dismissed.

D.

The County

The district court dismissed the County for three reasons. First, the district court held that the County was immune from suit for common law torts. Second, the district court held that Appellant had not alleged any underlying violations of the Maryland Declaration of Rights, which negated any vicarious liability against the County. Third, and similarly, the district court held that Appellant had not alleged any underlying violation of

16

the United States Constitution, which is likewise a necessary element of a *Monell* claim. Appellant does not bother to challenge these rulings before us.

Instead, he takes issue with the district court's conclusion that the State's Attorney was acting as a State, rather than County, employee. Though his briefing is far from clear, Appellant appears to contend that (1) the State's Attorney was acting as a County employee; (2) the County can be liable for the State's Attorney's *Brady* violations; and (3) the district court erred by not recognizing this claim.

We readily reject this argument because Appellant never alleged the State's Attorney was acting as a County employee. To the contrary, he alleged, "[a]t all relevant times [the] attorneys within the Office of the State's Attorney for Baltimore County were *State employees whose actions were committed within the scope of their employment and for the benefit of the State*." J.A. 51 (emphasis supplied).

The district court had no duty to rewrite Appellant's Amended Complaint to include allegations he specifically failed to make. Neither do we.

## IV.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED*.

17